David R. Jordan, Ariz. Bar No. 013891
***The Law Offices of David R. Jordan, P.C.***
1995 State Road 602
PO Box 840
Gallup, NM 87305-0840
(505) 863-2205
Fax: (866) 604-5709
Attorney for Plaintiff
djlaw919@gmail.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Velena Tsosie,**         Plaintiff, <br><br>vs.<br><br>**N.T.U.A. Wireless, L.L.C., a Delaware Limited Liability Company; Walter Haase and Jane Doe Haase, husband and wife,**         Defendants. | No. _____<br><br>**COMPLAINT** |

Plaintiff alleges:

1. This action arises under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.). Other claims are brought pursuant to the ancillary jurisdiction of this Court. This Court is vested with jurisdiction pursuant to 42 U.S.C. § 2000e-5.

2. Plaintiff demands a jury trial.

3. The events described in this complaint took place in Maricopa County, Arizona.

1

4.      Plaintiff is the General Manager of Defendant N.T.U.A. Wireless, L.L.C., a Delaware Limited Liability Company (hereinafter, the "Company"). As General Manager, she is the Chief Executive Officer of the company. She answers to the Company's board of directors.

5.      The claims in this case were first presented to the Equal Employment Opportunity Commission. The EEOC issued a right to sue, which is attached as Exhibit "A".

6.      The Company is a limited liability company that is owned and controlled by two members: Commnet Newco, LLC, a Delaware limited liability ("Commnet") and Navajo Tribal Utility Authority, a tribal enterprise organized under the laws of the Navajo Nation ("NTUA").

7.      The Company was formed to engage in various wireless communications businesses on the Navajo Nation.

8.      Defendant Walter Haase was, until April 15, 2022, a member of the Company's board of directors. He is the General Manager of NTUA, making him the Chief Executive Officer of that entity.

9.      Defendant Jane Doe Haase is the fictitious name of the wife of Walter Haase, who is added for the sole purpose of attaching community property.

10.     On May 20, 2016, the Company and its members executed an "Amended and Restated Limited Liability Company Agreement" (the "Agreement"). Upon

information and belief, this is still an operative document governing the Company's operations.

11. Paragraph 12.3 of the Agreement waives the sovereign immunity of the Navajo Nation and selects this Court as the Court for resolution of disputes (paragraphs a-c are bolded and all caps in the original):

**(a) EACH OF THE PARTIES HERETO HEREBY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF ARIZONA AND ANY UNITED STATES DISTRICT COURT LOCATED IN THE STATE OF ARIZONA, AS WELL AS TO THE JURISDICTION OF ALL COURTS TO WHICH AN APPEAL MAY BE TAKEN FROM SUCH COURTS, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING RELATING TO ANCILLARY MEASURES IN AID OF ARBITRATION, PROVISIONAL REMEDIES AND INTERIM RELIEF, OR ANY PROCEEDING TO ENFORCE ANY ARBITRAL DECISION OR AWARD. WITHOUT LIMITATION OF THE FOREGOING, NTUA HEREBY EXPRESSLY WAIVES ANY SOVEREIGN IMMUNITY OR SIMILAR PROTECTION THAT MAY APPLY TO NTUA OR OF WHICH NTUA MAY AVAIL ITSELF, AND FURTHER EXPRESSLY WAIVES ANY AND ALL RIGHTS TO LITIGATE ANY MATTER RELATED TO THIS AGREEMENT IN THE COURTS OF THE NAVAJO NATION, INCLUDING ITS RIGHT (IF ANY) TO APPLY THE TRIBAL EXHAUSTION DOCTRINE IN ANY PROCEEDING OR LITIGATION IN ANY COURT REFERRED TO IN THE FIRST SENTENCE OF THIS SECTION 12.3(A).**

**(b) EACH PARTY HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS TO BRING ANY SUIT, ACTION OR OTHER PROCEEDING IN OR BEFORE ANY COURT OR TRIBUNAL OTHER THAN THE COURTS DESCRIBED IN SECTION 12.3(a) AND COVENANTS THAT SUCH PARTY SHALL NOT SEEK IN ANY MANNER TO RESOLVE ANY DISPUTE OTHER THAN AS SET FORTH HEREIN OR TO CHALLENGE**

**OR SET ASIDE ANY DECISION, AWARD OR JUDGMENT OBTAINED IN ACCORDANCE WITH THE PROVISIONS HEREOF.**

**(c) EACH OF THE PARTIES HERETO HEREBY EXPRESSLY WAIVES ANY AND ALL OBJECTIONS SUCH PARTY MAY HAVE TO VENUE, INCLUDING, WITHOUT LIMITATION, THE INCONVENIENCE OF SUCH FORUM, IN ANY OF SUCH COURTS. IN ADDITION, EACH OF THE PARTIES CONSENTS TO THE SERVICE OF PROCESS BY PERSONAL SERVICE OR ANY MANNER IN WHICH NOTICES MAY BE DELIVERED HEREUNDER IN ACCORDANCE WITH SECTION 14.5.**

(d) Without limitation of the foregoing, NTUA acknowledges and agrees that this Agreement is "a Limited Liability Company Agreement of NTUA Wireless, LLC" within the meaning of and as referenced in clause (i) of the letter dated February 24, 2011 from Walter W. Haase, P.E., General Manager of the Navajo Tribal Utility Authority, to the Honorable Johnny Naize, Speaker of the Navajo Nation Council, announcing the grant of a waiver of the NTUA's sovereign immunity for the enforcement of this Agreement.

12. Plaintiff was the victim of discrimination against her with respect to her compensation, terms, conditions, or privileges of employment because of her gender. This constitutes an unlawful act pursuant to 42 U.S.C. § 2000e-2(a)(1).

13. On March 8, 2022, Plaintiff was invited to a dinner with Defendant Haase, NTUA General Manager, and other Commnet employees at a restaurant. The restaurant was in Mesa, Arizona. During the dinner, Plaintiff excused herself to take a call. While she was on the telephone, Defendant Haase waited for her to end her call. Defendant Haase sat about 20 feet on a different sofa.

14. She noticed he was waiting for her, so she finished her telephone conversation. He said, "I want you to know that you are doing a great job and I understand how close your family are, how close Navajo families are. I want you to know that I will take care of you, take care of your family do not worry about work. You are

4

doing a great job."

15. Plaintiff thanked him, and Defendant Haase leaned in to hug her. She has had "side hugs" with Defendant Haase before, but this time he hugged her tightly across her body. She immediately became uncomfortable. She suggested that they go back to the table. Defendant Haase grabbed her hand and held it tightly. She became very uncomfortable at this gesture.

16. Back at the table, and in front of witnesses, Defendant Haase repeatedly grabbed her hand, ran his hand up and down her back, and he even put his head on her shoulder. He hugged her, kissed her head and put his hand on the inside of her thigh. Plaintiff repeatedly moved away, and he would respond by pulling her closer to him. On one occasion, Plaintiff turned away from him, and he forcibly turned her toward him, saying "I'm over here!"

17. Thereafter, Defendant Haase kept telling Plaintiff that that he would always be there for her and would not leave her. He said that he "supported" her and told her she was doing a "wonderful job." On three separate occasions, he grabbed her hand. She tried to change her hand position, to make the gesture more of a handshake. Each time she said, "Thank you, Defendant Haase for your support. I appreciate it." Then she took her hand back. Eventually, he positioned himself so that he had one leg on the back of her chair and the other next to her, with Plaintiff between his legs.

18. She attempted to resist his advances, but, due to his superior position in the corporate structure, she became afraid that resisting him would lead to her losing her job

5

or suffering other employment repercussions. Plaintiff has witnessed other employees become the victims of retaliation for complaining about management.

19. When Defendant Haase put his head on her arm, she rose and asked to speak to another employee. While they were speaking, Defendant Haase walked up. He squeezed her shoulder and ran his hand down her arm to her hand. He asked why they were away from the table. The other employee responded, "We're talking, we'll be back in a few."

20. Defendant Haase walked away, but then returned. He grabbed Plaintiff's hand and pulled her up. Defendant Haase grabbed her around the shoulder and walked with her back to the table. He kissed her head again and said, "She is like my daughter." He kissed her head a third time, and she pulled away and sat down.

21. Plaintiff took a call, and Defendant Haase again put his arm head on her arm and asked who she was texting. He went to the restroom, and Plaintiff took the opportunity to leave the dinner.

22. Plaintiff complained to the Company, NTUA and Commnet regarding this assault. On April 15, 2022, she received a response from Rowena Benally, NTUA's human resources manager. The response included this statement: "Though we could not confirm your allegations, remedial actions have been taken to address your concerns."

23. Plaintiff alleges that the Company's failure to "confirm" the allegations was based upon an inadequate investigation and a willful decision to ignore evidence in support of Plaintiff's allegations. This makes the Company a culpable participant in the

behavior.

24. Further, the Company issued a press release calling Plaintiff's claims "aggressive and abrasive". No sympathy, concern or support was offered by the Company to Plaintiff after suffering this assault. Again, this makes the Company a culpable participant in the behavior.

25. Defendant Haase is still the general manager of NTUA. Plaintiff believes, and does allege, that the "remedial actions" taken by NTUA amount to little more than a slap on the wrist. The only visible "remedial action" was Haase's removal from the Company's board, which Plaintiff alleges was a defensive action in anticipation of this lawsuit. Defendant Haase has not even apologized to Plaintiff for his assault.

26. This incident has left Plaintiff extremely mentally scarred. This incident involved repeated batteries upon her person. She was humiliated in front of her co-workers because Defendant Haase chose to treat her as a possession that he could treat however he wanted.

## FIRST CLAIM FOR RELIEF

### (Violations Of Title VII)

27. Plaintiff realleges every allegation of the complaint.

28. Plaintiff was subjected to unwelcome verbal and physical conduct of a sexual nature, and the conduct was sufficiently severe to alter the conditions of the Plaintiff's employment and create an abusive working environment.

29. Although this event happened only once, it was sufficiently severe to alter

7

then conditions of her employment. The severity can be seen by the Court when looking from the perspective of a reasonable woman and at the fact that the assault was physically threatening, was humiliating, and unreasonably interferes with Plaintiff's work performance. For example, Plaintiff has been excluded from meetings after this incident, has been cut out of decision making on key matters, and has had to avoid Defendant Haase, who, despite his removal from the Board, is still a pervasive part of Plaintiff's workplace.

30. The lack of any meaningful response by Defendants has heightened the abusive nature of the workplace.

31. Defendant Haase used his apparent authority to accomplish the assault on Plaintiff and so was acting within the apparent scope of his employment. This was aggravated by the fact that the assault occurred at a corporate dinner. The Company had actual or constructive knowledge of the harassment.

32. The Company was negligent in training its employees on its sexual harassment policies, which directly contributed to this assault.

33. The Company had a specific policy on sexual harassment which was not followed in this case. The Company states that: "making unwelcome sexual advances" and "unwanted physical contact" is sexual harassment, that sexual harassment will not be tolerated, and that appropriate disciplinary action will be taken if sexual harassment occurred. The conduct of Defendant Haase was "unwanted physical contact", but it was tolerated and not properly disciplined.

34. Defendants violated Title VII, and Plaintiff does hereby demand damages for this violation, including damages for emotional harm and mental anguish. She also demands recovery of her attorneys' fees.

## SECOND CLAIM FOR RELIEF

## (Violations of A.R.S. § 41-1463)

35. Plaintiff realleges every allegation of the complaint.

36. Arizona law makes it unlawful to "fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, age or national origin or on the basis of disability." A.R.S. § 41-1463(B)(1).

37. The conduct described herein violates A.R.S. § 41-1463(B)(1).

38. This claim was presented to the Civil Rights Division of the Arizona Attorney General's office. Although that office was advised of the sovereign immunity waiver, it deferred investigation to the EEOC. As noted, above, the EEOC issued a right to sue.

39. Defendants violated A.R.S. § 41-1463(B)(1), and Plaintiff does hereby demand damages for this violation, including damages for emotional harm and mental anguish. She also demands recovery of her attorneys' fees.

## THIRD CLAIM FOR RELIEF

### (Assault)

40. Plaintiff realleges every allegation of the complaint.

41. The facts alleged herein demonstrate that Defendant Haase placed Plaintiff in real and actual apprehension of an offensive contact on her person. This constitutes common law assault under Arizona law. The facts alleged herein further demonstrate that the Company is vicariously liable for the assault.

42. This was done at a corporate dinner, with corporate employees present. The Company did not repudiate or denounce the act, even though the facts were presented to it to do so. Rather, the Company made a public statement accusing Plaintiff of wrongdoing in making the complaint. This conduct makes the Company vicariously liable for the assault.

43. Plaintiff demands damages for the assault, including damages for emotional harm and mental anguish.

44. This assault was motivated by an evil mind. Defendants were motivated by an intent to cause harm and/or were outrageous, creating a substantial risk of tremendous harm. Plaintiff demands punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Battery)

45. Plaintiff realleges every allegation of the complaint.

46. The facts alleged herein demonstrate that Defendant Haase engaged in an

10

act that results in harmful or offensive contact with Plaintiff. This constitutes common law battery under Arizona law. The facts alleged herein further demonstrate that the Company is vicariously liable for the battery.

47. This was done at a corporate dinner, with corporate employees present. The Company did not repudiate or denounce the act, even though the facts were presented to it to do so. Rather, the Company made a public statement accusing Plaintiff of wrongdoing in making the complaint. This conduct makes the Company vicariously liable for the battery.

48. Plaintiff demands damages for the battery, including damages for emotional harm and mental anguish.

49. This battery was motivated by an evil mind. Defendants were motivated by an intent to cause harm and/or were outrageous, creating a substantial risk of tremendous harm. Plaintiff demands punitive damages.

**FIFTH CLAIM FOR RELIEF**

**(Intentional Infliction of Emotional Distress)**

50. Plaintiff realleges every allegation of the complaint.

51. The conduct by Defendant Haase as alleged herein was "extreme" and "outrageous". The Arizona Supreme Court has specifically ruled that "More specifically, intentional infliction of emotional distress is often based upon claims of sexual harassment, 1 L. Larson, *Employment Discrimination* § 41.67(b), at 8–148 (1984). The failure of an employer to promptly investigate complaints of sexual harassment is

significant in making a determination to impose liability on an employer for its supervisors' acts of sexual harassment. B. Schlei & P. Grossman, *Employment Discrimination Law* 427 (2d ed. 1983)." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987).

52. Defendant Haase either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct.

53. Plaintiff did suffer severe emotional distress as a result of Defendant Haase's conduct.

54. Accordingly, Defendant Haase committed the tort of the intentional infliction of emotional distress.

55. The Company supported, ratified and exacerbated the conduct by failing to conduct a proper investigation, failing to repudiate the behavior when circumstances warranted, accusing Plaintiff publicly of being "aggressive and abrasive" and asserting that Plaintiff's internal complaint was not substantiated. The Company is vicariously liable for the conduct.

56. Plaintiff demands damages for the intentional infliction of emotional distress, including damages for emotional harm and mental anguish.

57. This infliction was motivated by an evil mind. Defendants were motivated by an intent to cause harm and/or were outrageous, creating a substantial risk of tremendous harm. Plaintiff demands punitive damages.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1  A.  Damages in an amount to be determined by the Court;

2  B.  Court costs and attorneys' fees; and

3  C.  Such other relief as the Court deems just and proper.

***The Law Offices of David R. Jordan, P.C.***

*/s/ David R. Jordan*

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Velena Tsosie<br>PO BOX 3748<br>Chinle, AZ 86503 | From: | Phoenix District Office<br>3300 North Central Avenue, Suite 690<br>Phoenix, AZ 85012 |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 35A-2023-00011 | Patricia Miner,<br>Supervisory Investigator | 602-661-0040 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

   Less than 180 days have elapsed since the filing date. I certify that the Commission s processing of this charge will not be completed within 180 days from the filing date.

   The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

[signature]    11/22/2022

Enclosures(s)

Melinda Caraballo
Acting District Director

cc:  Monica Akin
     Commnet
     1562 Park St.
     Castle Rock, CO 80109

     David Jordan
     The Law Offices of David R. Jordan, P.C.
     1995 State Road #602 PO BOX 840
     Gallup, NM 87305

Exhibit A