**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Velena Tsosie, | No. CV-23-00105-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| N.T.U.A. Wireless LLC, et al., | |
| Defendants. | |

Plaintiff Velena Tsosie brings this action against her employer, Defendant NTUA Wireless, and her former supervisor, Defendant Walter Haase, and his wife. Doc. 1. Defendants move to dismiss the complaint under Rule 12(b)(1). Doc. 8. The motion is fully briefed and no party requests oral argument. For reasons set forth below, the Court will deny the motion.

**I.  Background.**

Defendant NTUA Wireless ("Wireless") provides internet, telephone, and data communication services in and around the Navajo Nation. Doc. 1 ¶ 7; Doc. 11-1 at 10. Wireless is a Delaware limited liability company, owned by Commnet Newco and Navajo Tribal Utility Authority ("NTUA"). Doc. 1 ¶¶ 4, 6. Commnet Newco is also a Delaware limited liability company and the managing member of Wireless. *Id.* ¶ 6; Doc. 11-1 at 6. NTUA is a tribal enterprise of the Navajo Nation. Doc. 1 ¶ 6.

Defendant Walter Haase is the general manager of NTUA and served on the board of Wireless until April 2022. *Id.* ¶ 8. Plaintiff is the general manager of Wireless and reports directly to the Wireless board. *Id.* ¶ 4.

Plaintiff's claims arise from a working dinner that occurred in March 2022, while Plaintiff reported to Defendant Haase. *Id.* ¶¶ 8, 13. The complaint alleges that Defendant Haase made unwelcome suggestive comments to Plaintiff (*id.* ¶¶ 14, 16-17, 20), and initiated unwelcome physical contact with Plaintiff (*id.* ¶¶ 15-17, 19-21). The complaint alleges that Wireless conducted an inadequate investigation, issued a retaliatory press release, and failed to sufficiently discipline Defendant Haase. *Id.* ¶¶ 22-25.

Plaintiff asserts claims for violation of Title VII of the Civil Rights Act of 1964, violation of the Arizona Civil Rights Act, A.R.S. § 41-1463, assault, battery, and intentional infliction of emotional distress. *Id.* ¶¶ 27-57. Defendants move to dismiss the complaint on tribal immunity grounds. Doc. 8.

**II      Legal Standards.**

Federal courts are courts of limited jurisdiction, "possess[ing] only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Courts presume that a claim "lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Id.* (citations omitted); *see Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) (same).

"A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in . . . a Rule 12(b)(1) motion." *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 (9th Cir. 2017). Such a motion may be either a factual or facial attack on jurisdiction. *See Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack, like this one, asserts that the allegations in the operative pleading, even when taken as true, are "insufficient on their face to invoke federal

jurisdiction." *Id.* When considering a facial attack, the Court takes the allegations in the complaint as true. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

**II.   Analysis.**

Defendants argue that the Court lacks subject matter jurisdiction because Wireless is entitled to tribal immunity as an arm of the Navajo Nation and has not waived tribal immunity for Plaintiff's claims. Doc. 8 at 3-11.[1]

It is well-established that Indian tribes are immune from suit absent congressional authorization or clear waiver. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (citation omitted); *see also Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 789 (2014) (citing *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998)). "Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation." *Kiowa Tribe*, 523 U.S. at 760. "Tribal sovereign immunity not only protects tribes themselves, but also extends to arms of the tribe acting on behalf of the tribe." *White v. Univ. of California*, 765 F.3d 1010, 1025 (9th Cir. 2014) (citations omitted).

The Ninth Circuit has adopted five factors for assessing whether an entity is an "arm of the tribe" – (1) the method of creation of the entity, (2) the purpose of the entity, (3) the structure, ownership, and management, including the tribe's control over the entity, (4) the tribe's intent to share sovereign immunity, and (5) the financial relationship between the tribe and the entity. *Id.* (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010)); *see also Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006) ("The question is not whether the activity may be characterized as a business . . . but whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe.").

If the Court determines that Wireless is an arm of the Navajo Nation, Wireless is entitled to tribal immunity. The Court will then inquire into whether Congress has

---

[1] Defendants also note that Indian tribes and arms of tribes are not proper defendants under Title VII, 42 U.S.C. § 2000e(b). *Id.* at 3-4.

abrogated or Wireless has waived its tribal immunity. If Wireless is not an arm of the Navajo Nation, it is not entitled to tribal immunity and the Court has jurisdiction.

### A.     Method of Creating Wireless.

NTUA and Commnet Newco formed Wireless as a corporate entity under Delaware law. Doc. 1 ¶ 4. NTUA holds a 51% interest in Wireless and Commnet Newco holds 49%. Doc. 11-1 at 1. It is undisputed that NTUA enjoys tribal immunity as an enterprise of Navajo Nation. Doc. 8 at 5-6; Doc. 11 at 11.

Defendants argue that the tribal immunity enjoyed by NTUA extends to Wireless. Doc. 8 at 5-6. Defendants further argue that the Speaker of the Navajo Nation Council's approval of the Wireless operating agreement shows the Tribe was involved in Wireless's creation. *Id.*

District courts in this circuit have recognized that subsidiaries that are wholly owned by an Indian tribe or an arm of the tribe enjoy tribal immunity. *See, e.g.*, *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, No. CV-16-08077-PCT-SPL, 2017 WL 4277133, at *3 (D. Ariz. Sept. 11, 2017), *aff'd*, 932 F.3d 843 (9th Cir. 2019) ("[I]t is clear that Intervenor-Defendant Navajo Transitional Energy Company enjoys sovereign immunity as an arm of the Navajo Nation. Established in 2013, NTEC is a wholly-owned Navajo corporation organized pursuant to Navajo law."); *Cadet v. Snoqualmie Casino*, 469 F. Supp. 3d 1011, 1015 (W.D. Wash. 2020) ("The Casino is wholly owned and operated by the Tribe [and] was formed by the Tribe pursuant to the SEA Act, a resolution codifying the Tribe's authority over the Casino. Thus, the first *White* factor favors the Casino functioning as an 'arm of the Tribe.'").

This case is different. NTUA does not wholly own Wireless, and Wireless was not formed under the laws governing the Tribe. Other courts considering similar circumstances have declined to confer tribal immunity. *See Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012) ("CND, a separate legal entity organized under the laws of another sovereign, Oklahoma, cannot share in the Nation's immunity from suit."); *Hunter v. Redhawk Network Sec., LLC*, No. 6:17-CV-0962-JR, 2018 WL 4171612, at *3

(D. Or. Apr. 26, 2018) ("Defendant contends that because Redhawk's parent corporation . . . was incorporated under tribal law, and Redhawk is only one 'layer' removed . . . the method of creation factor weighs in favor of immunity. The first factor in determining whether an entity is an 'arm of the tribe,' however, focuses solely on the method of creation of the entity in question. Therefore, this factor weighs against a finding that Redhawk is an 'arm of the tribe.'").

What is more, Wireless – the Delaware corporation – is the defendant in this case, not NTUA. As a Delaware company, Wireless does not enjoy NTUA's tribal immunity by virtue of being partly owned by NTUA. *McCoy v. Salish Kootenai Coll., Inc.*, 785 F. App'x 414, 415 (9th Cir. 2019) ("[T]he first factor – the method of creation factor – weighs against finding that the College is an arm of CSKT because this action is against the Montana corporation, not the tribal corporation.").[2]  This factor weighs against immunity.

### B. Purpose of Wireless.

Wireless was "formed for the purpose of engaging (directly or indirectly) in providing data, internet and voice telephone services in and near the Navajo Nation, and pursuing the same for its income and profit." Doc. 11-1 at 15. The Federal Trade Commission designated Wireless as an "eligible telecommunications carrier." *Id.* This status allows Wireless to provide affordable telecommunications services to low-income consumers and receive subsidies from the federal government. *See* 47 U.S.C. § 254 (c)(3)(e); 47 C.F.R. § 54.201.

Although a for-profit business, Wireless builds on NTUA's history of supplying the Navajo Nation with modern utilities. *See* Doc. 8 at 6 ("The Navajo Tribal Utility Authority

---

[2] That the Navajo Nation Council approved NTUA's operating agreement does not alter this conclusion. Tribes and their business partners form entities under state law for a variety of reasons. *See Dixon v. Picopa Const. Co.*, 772 P.2d 1104, 1112 (Ariz. 1989) ("[A]n Indian corporation's successful assertion of immunity . . . may deter persons or entities from entering into contractual relationships with that Indian corporation or any other Indian corporation. Non-Indians will undoubtedly think long and hard before entering into business relationships with Indian corporations that are immune from suit."); Felix S. Cohen, 1 Cohen's Handbook of Federal Indian Law § 21.02[2] (2019) ("Some tribes have created separate businesses entities that are not immune from suit. This has been a particularly useful tool for tribes operating off-reservation businesses. Any judgments, however, are limited to assets held by that entity.").

was created by the Navajo Tribal Council on January 22, 1959, in order to bring electric power to Shiprock, Navajo Nation[.]  The Authority has expanded into natural gas, water, sewer utility operations, and telecommunications and information services as well as increasing its electric services.") (citing 21 N.N.C. § 1(A)).

Wireless's purpose helps the Navajo Nation become "more self-sufficient, and better positioned to fund their own sovereign functions, rather than relying on federal funding." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 810 (2014); *see Manzano v. S. Indian Health Council, Inc.*, No. 20-CV-02130-BAS-BGS, 2021 WL 2826072, at *8 (S.D. Cal. July 7, 2021) (finding that providing health services weighs in favor of tribal immunity); *Hunter*, 2018 WL 4171612, at *3 (finding that providing network security services weighs in favor of tribal immunity).  This factor favors immunity.

### C. Structure, Ownership, and Management of Wireless.

Wireless is owned 51% by NTUA and 49% by Commnet Newco.  Doc. 11-1 at 6.  But neither NTUA nor Commnet Newco has the authority to unilaterally act for or bind Wireless.  *Id.* at 27.  Commnet Newco is the managing member and is responsible for active management of Wireless, including operations and regulatory matters.  *Id.* at 11; Doc. 11-2 at 3-4.

The operating agreement provides that Wireless "shall be managed under the direction of a Board" consisting of four directors.  Doc. 11-1 at 23.  NTUA and Commnet Newco each appoint two directors with equal voting power.  *Id.* at 23-24.  The operating agreement does not require that any director be a member of the Navajo Tribe.

Defendants contend that this corporate structure weighs in favor of finding that Wireless is an arm of the Navajo Nation.  Doc. 8 at 7-8.  Courts, under similar circumstances, have suggested otherwise.  *See Breakthrough*, 629 F.3d at 1193 (finding that the structure of an entity "weigh[ed] both for and against a finding of immunity" when seven board members sat on the tribal council and the tribe chairperson chaired the entity, but twelve directors and three officers were not tribal members); *People v. Miami Nation Enters.*, 386 P.3d 357, 373 (Cal. 2016) ("Evidence that the tribe actively directs or oversees

- 6 -

the operation of the entity weighs in favor of immunity; evidence that the tribe is a passive owner, neglects its governance roles, or otherwise exercises little or no control or oversight weighs against immunity.") (citation omitted).  With Commnet Newco designated as the managing member, this factor weighs slightly against immunity.

### D. Navajo Nation's Intent to Share Sovereign Immunity.

Defendants contend that "Wireless is providing services on the Navajo Nation . . . consistent with NTUA's statutory mandate to provide telecommunications services," showing that "NTUA intended to share its immunity with NTUA Wireless." Doc. 8 at 9.  But the relevant inquiry concerns "the *tribe's* intent with respect to the sharing of its sovereign immunity." *White*, 765 F.3d at 1025 (emphasis added) (citation omitted). It is not clear that the Navajo Nation elected to share its immunity with Wireless.

The Speaker of the Navajo Nation Council allowed NTUA to waive NTUA's sovereign immunity for enforcement of the Wireless operating agreement.  Doc. 11-1 at 37.  The operating agreement provides: "*NTUA* hereby expressly waives any sovereign immunity or similar protection that may apply to *NTUA* or of which *NTUA* may avail itself, and further expressly waives any and all rights to litigate any matter related to this agreement in the courts of the Navajo Nation[.]"  Doc. 11-1 at 37 (emphasis added) (cleaned up).

The operating agreement is silent on the Navajo Nation Council's intent to share sovereign immunity with Wireless.  But the Tribe's express waiver of NTUA's immunity in the operating agreement, and the fact that NTUA's only partially owns Wireless, imply that the Tribe did not intend to render Wireless immune.  *Cf. Breakthrough*, 629 F.3d at 1193 n.15 ("[B]ecause the Casino is wholly owned by the Authority, it is logical to assume that if the Tribe intended for the Authority to have immunity from suit, it also intended for the Casino to have immunity.").  This factor weighs against immunity.

### E. Financial Relationship Between Navajo Nation and Wireless.

The extent to which an Indian tribe relies on an entity "for revenue to fund its governmental functions, its support of tribal members, and its search for other economic

development opportunities" determines whether the financial relationship between the tribe and the entity favors tribal immunity. *Breakthrough*, 629 F.3d at 1195. And where "a judgment against [an] entity would significantly impact the tribal treasury," the entity is more likely to enjoy tribal immunity. *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 184 (4th Cir. 2019); *see, e.g.*, *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 726 (9th Cir. 2008) ("[T]he economic benefits produced by the casino inure to the Tribe's benefit because ACE's articles of incorporation state that all capital surplus from the casino shall be deposited in the Tribe's treasury and because the Tribe, as the sole shareholder, enjoys all of the benefits of an increase in the casino's value.").

An entity is less likely to enjoy immunity where a judgment against it would have no financial effect on the tribe. *Hunter*, 2018 WL 4171612, at *5 ("There is no evidence to suggest a suit against Redhawk would have any effect on the sovereign Tribe's treasury, because Redhawk is one step removed from Tribal management and control.") (citations omitted); *see also Hwal'Bay Ba: J Enters., Inc. v. Jantzen in & for Cnty. of Mohave*, 458 P.3d 102, 110 (Ariz. 2020) ("[W]e do not know whether GCRC's revenues fund any governmental functions of the Tribe or, if they do, the extent to which the Tribe depends on GCRC revenues for these functions. . . . Thus, based on this record, the superior court did not abuse its discretion by refusing to dismiss GCRC.").

Defendants argue that "Wireless is financially coincident with the economic operation of NTUA." Doc. 8 at 9. They also argue that Wireless is a vehicle through which NTUA achieves its statutory obligation to provide telecommunications services to the tribe. *Id.* But there is no indication that profits generated by Wireless benefit the Navajo Nation. Indeed, the Wireless operating agreement provides that profits are directly allocated between NTUA and Commnet Newco. Doc. 11-1 at 18. Likewise, the agreement does not indicate that losses reach the Navajo Nation. Losses are allocated between NTUA and Commnet Newco. *Id.* And neither the operating agreement nor the management agreement suggest a judgment against Wireless will reach the Navajo Nation.

This factor weighs against immunity.

### F. Conclusion.

"An entity asserting immunity as an arm of a sovereign tribe must show by a preponderance of the evidence that it is, in fact, an arm of the tribe." *McCoy v. Salish Kootenai Coll., Inc.*, 334 F. Supp. 3d 1116, 1120 (D. Mont. 2018), *aff'd*, 785 F. App'x 414 (9th Cir. 2019) (cleaned up); *see also Williams*, 929 F.3d 170, 176-77 (4th Cir. 2019) ("Unlike the tribe itself, an entity should not be given a presumption of immunity until it has demonstrated that it is in fact an extension of the tribe."). Stated differently, Defendants must show that Wireless is "the kind of tribal entity, analogous to a governmental agency, which should benefit from the defense of sovereign immunity." *Breakthrough*, 629 F.3d at 1184 (citation omitted).

Three of the five relevant factors weigh against immunity, and a fourth weighs slightly in that direction. The Court accordingly concludes that Wireless is not "an arm of [the Navajo Nation], acting as more than a mere business." *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188 (9th Cir. 1998).

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 8) is **denied**.

Dated this 27th day of June, 2023.

David G. Campbell
Senior United States District Judge